IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEEPWATER CORROSION SERVICES, INC. | § § § | |
| Plaintiff, | § § | |
| vs. | § § | C.A. NO. 4:09-CV-189 |
| ENBRIDGE OFFSHORE PIPELINES, LLC; ENBRIDGE OFFSHORE (GAS TRANSMISSION), LLC; STARFISH PIPELINE COMPANY, LLC; MCX GULF OF MEXICO, LLC; STINGRAY PIPELINE COMPANY, LLC; ATP OIL & GAS CORPORATION; TRITON GATHERING, LLC; TARPON OFFSHORE VENTURES, LP; AND TARPON OPERATING & DEVELOPMENT, LLC, | § § § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANT STARFISH PIPELINE COMPANY, LLC'S ANSWER AND COUNTERCLAIM TO PLAINTIFF'S ORIGINAL COMPLAINT**

Pursuant to the Federal Rules of Civil Procedure, Defendant Starfish Pipeline Company, LLC ("Starfish") files this Answer and Counterclaim to the Original Complaint of Deepwater Corrosion Services ("Deepwater") and states:

**I.
ANSWER**

1. Starfish admits the allegations set forth in Paragraph 1 of Deepwater's Complaint.

2. Starfish admits the allegations set forth in Paragraph 2 of Deepwater's Complaint.

3. Starfish admits the allegations set forth in Paragraph 3 of Deepwater's Complaint.

4. Starfish is a Delaware corporation. Starfish admits that it does not maintain a regular place of business in Texas and that it does not have an agent designated for service in Texas. Starfish denies the remaining allegations in Paragraph 4 of Deepwater's Complaint.

5. Starfish admits the allegations set forth in Paragraph 5 of Deepwater's Complaint.

6. Starfish lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 6 of the Complaint and, therefore these allegations are denied.

7. Starfish lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 7 of the Complaint and, therefore these allegations are denied.

8. Starfish admits the allegations set forth in Paragraph 8 of Deepwater's Complaint.

9. Starfish lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 9 of the Complaint and, therefore these allegations are denied.

10. Starfish lacks the knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 10 of the Complaint and, therefore these allegations are denied.

11. Starfish admits the jurisdictional allegations as set forth in Paragraph 11 of Deepwater's Complaint.

12. Starfish admits this Court may exercise venue. The work on the Platform occurred offshore Louisiana. Starfish denies the remaining allegations in Paragraph 12 of Deepwater's Complaint.

13. Starfish specifically denies that they owe $645,180 to Deepwater for the installation of a cathodic protection retrofit system. Starfish admits that Deepwater is in the business of providing cathodic protection to offshore structures, and that Deepwater contracted with defendant Starfish Pipeline Company, LLC for Deepwater to provide cathodic protection to a platform located on the Outer Continental Shelf in Garden Banks 191-A ("the Platform"). Starfish denies the remaining allegations in Paragraph 13 of the Complaint.

14. Starfish wanted to prevent corrosion of and provide corrosion protection to the Platform. Starfish admits that it discussed the possibility of utilizing a CP Retrofit system to protect the Platform with Deepwater. Starfish denies the remaining allegations set forth in Paragraph 14 of Deepwater's Complaint.

15. Starfish admits that on September 28, 2007, Deepwater submitted a proposal for a CP Retrofit of the Platform. Starfish admits that the proposal included two design options and that Starfish eventually selected Option 2 as the appropriate project to be conducted on the Platform. Starfish denies all other allegations in Paragraph 15 of the Complaint.

16. Starfish admits that for Option 2, Deepwater priced materials at $241,450 and installation at $310,000. Starfish denies all other allegations in Paragraph 16 of the Complaint.

17. Starfish denies the allegations in Paragraph 17 of the Complaint.

18. Starfish admits that Starfish issued the Purchase Order attached as Exhibit B to the Complaint. Starfish denies any remaining allegations contained in paragraph 18 of the Complaint.

19. Starfish admits that Starfish issued the Work Order Contract attached as Exhibit C to the Plaintiffs' Complaint. When issued, the work order attached the price page from the

Deepwater bid, and a set of terms and conditions which are not attached to Plaintiff' Complaint. Starfish denies any remaining allegations in paragraph 19 of the Complaint.

20. Starfish denies the allegations set forth in Paragraph 20 of Deepwater's Complaint.

21. Starfish denies the allegations set forth in Paragraph 21 of Deepwater's Complaint.

22. Starfish denies the allegations set forth in Paragraph 22 of Deepwater's Complaint.

23. Starfish admits that the work order stated, "Total value of this order is not to exceed $310,000 without prior company approval." Starfish denies all remaining allegations set forth in Paragraph 23 of Deepwater's Complaint.

24. Starfish admits that Deepwater's bid was submitted approximately five months before Starfish issued the Purchase Order and Work Order and approximately nine months before Starfish directed the offshore work to begin. Starfish denies the remaining allegations set forth in Paragraph 24 of Deepwater's Complaint.

25. Starfish specifically denies that usages in trade, and the parties' course of performance and course of dealing, established an acceptance by Starfish of any modifications to the work order contract. Starfish specifically denies any agreement that any increases in costs were part of the agreement to install the CP Retrofit. Starfish denies the remaining allegations set forth in Paragraph 25 of the Complaint.

26. Starfish denies the allegations set forth in Paragraph 26 of Deepwater's Complaint.

27. Starfish states that Deepwater knew from the time it submitted its bid for the project that the J-Tube of the Platform would be used for the CP retrofit. Starfish denies the remaining allegations in paragraph 27 of the Complaint.

28. Starfish admits that meetings occurred to discuss the project prior to going offshore to perform the work. Starfish denies the remaining allegations in Paragraph 28 of the Complaint.

29. Starfish denies the allegations set forth in Paragraph 29 of Deepwater's Complaint.

30. Starfish denies the allegations set forth in Paragraph 30 of Deepwater's Complaint.

31. Starfish denies the allegations set forth in Paragraph 31 of Deepwater's Complaint.

32. Starfish admits that Oceaneering requested to move its vessel to the Genesis Spar during the project, and that this movement was permitted. Starfish denies the remaining allegations in Paragraph 32 of the Complaint.

33. Starfish denies the allegations set forth in Paragraph 33 of Deepwater's Complaint.

34. Starfish admits that Deepwater invoiced Starfish $1,218,439.75 and that Starfish has refused to pay Deepwater because the only amount Starfish owed for the CP Retrofit was the amount contracted for in the purchase order and work order. Starfish admits that they have paid for the equipment covered by the purchase order. Starfish admits they have remitted $364,117.20 invoiced to Starfish for installation. Starfish denies the remaining allegations set forth in Paragraph 34 of Deepwater's Complaint.

35. Starfish admits that Deepwater sent improper lien notices on December 16, 2008. Starfish admits that it owns the Platform. Starfish denies the remaining allegations set forth in Paragraph 35 of Deepwater's Complaint.

36. Starfish admits that Deepwater filed liens in Cameron Parish and in Jefferson County, Texas, and that Starfish received a copy of the filed liens. Starfish denies the remaining allegations set forth in Paragraph 36 of Deepwater's Complaint.

37. Starfish admits that Deepwater did not have a contract with any other defendant. Starfish denies the remaining allegations set forth in Paragraph 37 of Deepwater's Complaint.

38. Starfish admits that after completion of the project it met with Deepwater to attempt a resolution. A resolution was not reached. Starfish requested that Deepwater provide a separate invoice for Oceaneering's charges. Starfish denies the remaining allegation in paragraph 38 of the Complaint.

39. Starfish does not posses information as to Deepwater's negotiations with Oceaneering, and consequently the allegations are denied. Starfish denies the remaining allegations in paragraph 39 of the Complaint.

40. Starfish admits that after completion of the project, it met with Mr. Britton to attempt a resolution. No resolution was reached. Starfish does not possess information as to Deepwater's negotiations with Deep Down, and consequently these allegations are denied. Starfish denies the remaining allegations in Paragraph 40 of the Complaint.

41. Starfish denies the allegations set forth in Paragraph 41 of Deepwater's Complaint. The Outer Continental Shelf Lands Act controls this case. GB 191A and the Platform are offshore Louisiana, not Texas, and Louisiana law applies. Moreover, as an alternative, the parties' work order contract nominates general maritime law as the choice of law.

42. Starfish admits it possessed a valid and enforceable contract with Deepwater. However, Deepwater has breached this contract. Deepwater's breaches have damaged Starfish and have resulted in the necessity for Starfish to hire counsel to assert their rights. Starfish denies the remaining allegations set forth in Paragraph 42 of Deepwater's Complaint.

43. Starfish denies the allegations set forth in Paragraph 43 of Deepwater's Complaint.

44. Starfish denies the allegations set forth in Paragraph 44 of Deepwater's Complaint.

45. Starfish denies the allegations set forth in Paragraph 45 of Deepwater's Complaint.

46. Starfish denies the allegations set forth in Paragraph 46 of Deepwater's Complaint.

47. Starfish denies the allegations set forth in Paragraph 47 of Deepwater's Complaint.

48. Starfish denies the allegations set forth in Paragraph 48 of Deepwater's Complaint.

49. Starfish denies the allegations set forth in Paragraph 49 of Deepwater's Complaint.

50. Pursuant to Federal Rule of Civil Procedure 38, Starfish demands trial by jury of all issues so triable.

## II.
## AFFIRMATIVE DEFENSES

51. Starfish asserts the defense of accord and satisfaction.

## III.
## COUNTERCLAIM

52.     Starfish entered a valid and enforceable contract for the installation of equipment associated with the CP-Retrofit project offshore Louisiana in GB 191A.  This contract was the work order contract W.O. W94123-13371-08 and its attachments.  Deepwater breached by failing to perform as contracted and by attempting to charge Starfish in excess of the contractually agreed price.  Deepwater's breaches, improper lien filings, and lawsuit caused damages to Starfish, and required Starfish to retain the undersigned counsel to assert these rights.  Starfish seeks recovery of its damages and attorneys' fees.

53.     Deepwater misrepresented its ability to perform the CP-Retrofit project for Starfish and misrepresented the timing and cost of the project.  These misrepresentations were either made knowingly, or without sufficient information as to the accuracy or inaccuracy of the facts conveyed, in order to induce Starfish to hire Deepwater to perform the work.  Starfish justifiably relied upon Deepwater's misrepresentations to its detriment and damage.  Starfish asserts causes of action for fraudulent inducement, and alternatively, negligent misrepresentation.

54.     Deepwater has improperly filed a lien against Starfish's Platform in Louisiana, Texas and with the MMS.  The Louisiana Oil, Gas and Water Wells Lien Act, LA. Rev. Stat. Ann. § 9:4861 et. seq., does not apply to this case because Deepwater did not provide any "operations" to a "well" on a well site under the statute.  The Platform at issue is not engaged in any drilling activities associated with any well and does not sit on a well site.  Moreover, the Louisiana Oil, Gas and Water Wells Lien Act specifically excludes from its scope "activities conducted for the purpose of transporting, handling, processing, treating or otherwise dealing with:  (i) Liquid hydrocarbons produced or separated at the well site after being removed from a

leasehold tank and delivered into a ….pipeline, or other facility for transportation away from the well site;" and "(ii) Hydrocarbons produced in gaseous form…after being delivered into a pipeline for transportation away from a well site…." LA. Rev. Stat. Ann. § 9:4861 (4)(b) "Operations". Starfish files this counterclaim and requests that this Court remove the improperly asserted lien and award Starfish its damages and attorneys' fees for the improper assertion and filing of this lien. LA. Code Civ. Proc. Ann. art. 3506.

55. The Texas "Liens Against Mineral Property" statute does not apply to this case, and does not provide any rights to Deepwater, because the Platform sits on the Outer Continental Shelf offshore Louisiana. Louisiana law, not Texas law, controls this case. Starfish files this counterclaim and requests that this Court remove the improperly asserted lien and award Starfish its attorneys' fees under Section 53.156 of the Texas Property Code.

56. Even if the Texas Property Code could somehow apply to this case, Section 56.002 of the Texas Property Code only grants a lien to a "mineral contractor or subcontractor to secure payment for labor or services related to <u>mineral activities</u>." The statute defines "mineral activities" as "digging, drilling, torpedoing, operating, completing, maintaining, or repairing an oil, gas, or water well, an oil or gas pipeline, or a mine or quarry." See Tex. Prop. Code § 56.002 (1)("Mineral Activities"). The Platform at issue assists in the transportation and shipping of oil and gas through pipelines; it is not a drilling platform and is not engaged in any "mineral activities" at a well site. Specifically, the platform is not engaged in "digging, drilling, torpedoing, operating, completing, maintaining, or repairing an oil, gas, or water well." Any equipment and services provided by Deepwater to Starfish do not relate to "mineral activities" and consequently do not form the basis for a lien under the statute. Starfish files this

9

counterclaim and asks that this Court remove the improperly asserted lien and award Starfish its attorneys' fees under Section 53.156 of the Texas Property Code.

57. The Louisiana Oil, Gas and Water Wells Lien Act specifically prevents a lien claimant from asserting a lien in excess of "the price of his contract for operations." La. R.S. 9:4862 A.(1). Even if the Texas "Liens Against Mineral Property" statute were applied, section 56.006 of the Texas Property Code also specifically prevents a plaintiff from subjecting an owner to liability greater than the amount agreed to be paid in the contract for furnishing material or performing labor. "An owner of land or a leasehold may not be subjected to liability under this chapter greater than the amount agreed to be paid in the contract for furnishing material or performing labor." TEX. PROP. CODE § 56.006. As the contract between Enbridge and Deepwater limited the cost of the work to an amount "not to exceed $310,000," Deepwater's purported lien in the amount of $645,180.79 violates both the Louisiana and Texas lien statutes. Starfish files this counterclaim and asks that the Court remove the improperly filed liens and award Starfish its damages and attorney fees.

## IV.
## JURY DEMAND

58. Pursuant to Federal Rule of Civil Procedure 38, Starfish demands trial by jury of all issues so triable.

## PRAYER

Therefore, Starfish Pipeline Company, LLC, prays that the Court deny the claims and causes of action of Deepwater; order that Deepwater remove its improper lien filings; order that Deepwater take nothing by way of this lawsuit; grant judgment to Starfish Pipeline Company,

10

8241618.1

LLC; award Starfish Pipeline Company, LLC, its damages, expenses, interest and attorneys' fees; and grant Starfish Pipeline Company, LLC, all other relief to which it is justly entitled.

        Respectfully submitted,

        SUTHERLAND ASBILL & BRENNAN LLP

        By    s/ Richard T. Stilwell
           Richard T. Stilwell
           Texas State Bar No. 00791737
           Fed ID# 18218
        2 Houston Center
        909 Fannin Street, Suite 2200
        Houston, Texas 77010
        Phone: 713.470.6100
        Fax: 713.654.1301
        Email: Tom.Stilwell@sutherland.com

OF COUNSEL:

SUTHERLAND ASBILL & BRENNAN LLP
David A. Baay
Texas State Bar 24027050
Fed ID# 598715
2 Houston
909 Fannin, Suite 2200
Houston, Texas 77010
Phone: 713.470.6100
Fax: 713.654.1301
Email: David.Baay@sutherland.com

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true and correct copy of the foregoing document was sent to opposing counsel via electronic filing on the 4th day of March, 2009.

> Ms. Terri M. Garcia
> McDaniel Hohlt P.C.
> 3555 Timmons Lane, Suite 1225
> Houston, Texas 77027-6497
>
> Timothy M. McDaniel
> McDaniel Hohlt P.C.
> 3555 Timmons Lane, Suite 1225
> Houston, Texas 77027-6497

                         /s/    Richard T. Stilwell
                              Richard T. Stilwell

8241618.1